1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH A. STORMS, | Case No. 2:21-cv-01534-JAK-SSC |
|     Plaintiff, | |
|   v. | |
| PAYCHEX, INC., et al., | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
|     Defendants. | |

The Court submits this Report and Recommendation to the Honorable John A. Kronstadt, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## REPORT

Plaintiff seeks sanctions against Defendants for the purported willful withholding of information in discovery and related misrepresentations to the Court. The Court finds no willful discovery misconduct but nevertheless recommends limited evidentiary preclusions to remedy any potential adverse consequences.

# I

Plaintiff Kenneth A. Storms brought this employment action against Defendants Paychex, Inc. and Paychex North America, Inc. (collectively, Defendants), alleging state-law claims, including age discrimination, retaliation, failure to prevent discrimination and harassment, and wrongful termination.  (ECF 1-2 at 6.)  Plaintiff alleged that he was employed by Defendants between March 2017 and December 2019.  (*Id.* at 10.)  Defendants removed the action to federal court based on diversity jurisdiction.  (ECF 1.)  The District Judge set a January 2023 nonexpert discovery cutoff[1] and a March 2023 deadline to file all motions.  (ECF 53, 56, 75.)  Trial was set to begin in May 2024. (ECF 117.)

At issue in this motion are the representations Plaintiff made about his education during the hiring process, specifically, whether he represented that he had earned a bachelor's degree.  These representations were relevant to Defendants' after-acquired-evidence defense.[2]  Complicating the inquiry is the fact that Defendants used an outside vendor, HireRight, to process Plaintiff's pre-employment background check.  (ECF 164-4 at 11–15.)

---

[1] Plaintiff alleges a fact discovery cutoff of March 2023 (ECF 164-1 at 11), but a review of the docket indicates a January 2023 cutoff (ECF 53; ECF 56), except that depositions were permitted until March 2023 (ECF 75).

[2] After-acquired evidence of an employee's wrongdoing may, in some circumstances, serve as a full or partial bar to an employee's relief on a claim for unlawful discharge.  *See McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 356 (1995); *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 429 (2014).

There are several discovery requests that might have yielded Plaintiff's representations.  On March 15, 2021, Plaintiff served on Defendants his first set of requests for production (RFPs), seeking, among other items, (1) Plaintiff's personnel file; (2) all documents relating to Plaintiff; (3) all documents relating to Defendants' hiring of Plaintiff; (4) all documents supporting Defendant's contention that Defendant did not wrongfully terminate Plaintiff; and (5) all documents in support of Defendants' affirmative defenses.  (ECF 164-4 at 85–86, 88–89, 91–93.)  The parties do not dispute that Defendants did not produce by the response deadline some of the materials Plaintiff used to apply for his job.

Defendants also served RFPs, one of which sought all versions of Plaintiff's resume since January 1, 2017, a date approximately two months prior to his offer of employment.  (ECF 171-1 at 9.)  On May 11, 2022, Plaintiff produced five resumes, four of which stated, as shown below, that Plaintiff had a "BS in Business and Education."  (*Id.* at 15–24.)

## EDUCATION

WEST VIRGINIA UNIVERSITY
**BS in Business and Education**

Though all five resumes were undated,[3] these four included Plaintiff's employment with Defendants, and thus, were unlikely to have been used in applying to Defendants.  (*Id.* at 15–24.)  As shown below, the remaining resume stated ambiguously, under a heading

---

[3] There is no discussion by the parties whether the resumes were produced in native format or contained metadata related to creation.

1   labeled "Education," "Business and Education" at West Virginia
2   University; no degree was listed, nor dates attended.   (*Id.* at 25.)

3   EDUCATION   |   **Business and Education**
4   WEST VIRGINIA UNIVERSITY

5       On October 29, 2022—approximately five months after serving his
6   discovery responses—Plaintiff was deposed and stated that he held no
7   degree from West Virginia University.  (ECF 171 at 4.)  Defendants
8   represent that this revelation "triggered" efforts to develop a previously
9   pleaded after-acquired-evidence defense[4] on the ground that "Plaintiff
10  had misrepresented his education background to Paychex and that such
11  misrepresentation was grounds for termination per Paychex policy."
12  (ECF 171 at 15–16.)

13      Subsequently, on April 17, 2023—well after the nonexpert
14  discovery cutoff and the deadline to respond to Plaintiff's RFPs
15  discussed above—Defendants produced a document interchangeably
16  referred to by the parties as "Exhibit SS," "PAYCHEX020168-020169,"
17  and "Exhibit 420."  (ECF 164-1 at 10–12; ECF 171 at 4–5.)  The
18  document stated, under a field titled Education/Training, that Plaintiff
19  held a "Bachelor Degree" in "Business and Education."  (ECF 88-3 at
20  417.)

21  **EDUCATION/TRAINING:**
22  **WEST VIRGINIA UNIVERSITY**
    Bachelor Degree
23  Business and Education

24  _____

25      [4] Defendants' answer contained this standard employment defense
    and was filed months before Plaintiff's deposition.  (ECF 1-3 at 3.)  At
26  the hearing before this Court on Plaintiff's motion for sanctions,
27  Defendants represented that their assertion of this defense, at that
    time, was not related to the later-adduced information concerning
28  Plaintiff's resume.

4

Also in April 2023, Defendants relied on Exhibit SS in opposing Plaintiff's motion for summary judgment on Defendants' after-acquired-evidence defense, which the District Judge denied in part, finding that Defendants "raised triable issues of fact with respect to [the defense]." (ECF 114 at 18; ECF 171 at 4–5, 15–16.)  A declaration in support of the opposition to the motion for summary judgment from Defendants' representative indicated that this document reflected "a true and correct copy of the resume Plaintiff submitted to Paychex in 2017 when Plaintiff applied for employment," which "Plaintiff uploaded . . . onto Paychex's former recruiting tool, MyStaffingPro, in early 2017," and which was "electronically stored in Paychex's files."[5]  (ECF 88-3 at 403–05; ECF 164-1 at 11; ECF 171 at 4–5.)  At that time, Plaintiff argued that he was "entitled to summary judgment on this defense because this argument was not mentioned in Paychex's interrogatory responses." (ECF 114 at 18.)  However, the court found harmless any failure by Defendants to supplement their interrogatory responses in this regard. (*Id.*)  Plaintiff did not raise any challenge to the validity of the document purported to be the operative resume.

Defendants then produced a July 12, 2023, report from vocational expert, June Hagen, Ph.D., opining, "[p]er [Plaintiff's] resume and Paychex job application, he state[d] that he has a Bachelor of Science in Business and Education from West Virginia University," and thus,

---

[5] Defendants have since referred to this document as an "electronic record of Plaintiff's resume," and not the resume, itself. (ECF 171 at 4–5.)  The Court observes that the document appears as database output and lacks the formatting of the other documents Plaintiff produced to Defendants as resumes.

1  "gave incorrect information about having a degree." (ECF 164-4 at 147–
2  48.)

3      On May 9, 2024, the court held a final pretrial conference. (ECF
4  162.) The District Judge denied Plaintiff's motion *in limine* to exclude
5  Exhibit SS, referred to as "[Plaintiff]'s resume," and further ordered,
6  "[t]o remedy any prejudice from the delay in disclosure of this
7  affirmative defense, Plaintiff may conduct a one-hour deposition of the
8  witness identified by Defendants in supports of their defense." (ECF
9  162 at 2.) Again, Plaintiff seemingly did not dispute the validity of the
10 document held out by Defendants as a representation of Plaintiff's
11 resume. (ECF 144; ECF 171 at 5.)

12     The following day—eleven months after Defendants' production of
13 SS Exhibit purporting to be a record of the resume that Plaintiff
14 submitted during the hiring process, and well after the deadline for
15 responses to Defendants' RFPs seeking Plaintiff's resumes—Plaintiff
16 produced two documents that changed the course of Defendants'
17 affirmative defense. The first was a January 24, 2017 email, in which
18 Plaintiff wrote to an employee of Defendants, "I have attached my
19 resume as you requested to forward to your recruiter," and included a
20 sixth, not-yet-produced (despite the discovery request discussed above)
21 iteration of his resume. (ECF 164-4 at 2, 5; ECF 171 at 5; ECF 171-1 at
22 48–50.) During the motion hearing, Plaintiff's counsel stated that
23 Plaintiff retrieved this email from his own Gmail account and provided
24 it to counsel to produce to Defendants. As reflected below, this version
25 stated ambiguously, under the "Education" heading, "Bachelor Degree
26 Program – Business and Education" from West Virginia University.
27 (ECF 164-4 at 6.)

28

**EDUCATION**

**Bachelor Degree Program – Business and Education**
WEST VIRGINIA UNIVERSITY

The second was a March 17, 2017, email from a recruitment representative of Defendants, relaying to Plaintiff that his "background check and drug screen ha[d] cleared" and conveying a March 2017 start date.  (ECF 164-4 at 2, 8–9.)  This document sheds little light on the question regarding Plaintiff's degree representations, but was certainly responsive to Plaintiff's March 2021 RFPs and was not produced by Defendants.

Thereafter, Plaintiff obtained and produced a report from HireRight showing the results of his pre-employment background check.  (ECF 164-4 at 2, 11–15.)  Plaintiff points to this as proof that he did not misrepresent his degree, but, here again, ambiguity remains.

As shown below, the document reflects a log of actions taken on Plaintiff's background check wherein HireRight flagged a "Major Discrepancy" by email to a name at the address "@paychex.com."  The log notes a "discrepancy in start and/or end dates of enrollment, degree and degree date."  (*Id.* at 13–14.)

1

**HireRight Comments:** Mar 16, 2017 5:15 AM PDT - HireRight Automation - This request is pending because the school needs additional time to research the records. Once records are retrieved the school will update the candidate records and NSCH will respond back to HireRight. Used NSCH code: 003827

2

Mar 16, 2017 3:17 PM PDT - HireRight Automation - Per HireRight's database school only verifies through NSCH2 - DegreeVerify. Submitted Request. Request ID: 144382517. Surcharge applies.

3

4

Mar 16, 2017 4:54 PM PDT - Kumar, Sukanya Shantha - Note: The information provided by the NSCH has been verified with a discrepancy found in the Degree information. Applicant contact needed

5

Mar 17, 2017 6:47 AM PDT - Rosalie Gabriel - Note: Requested the following from the applicant: Degree date clarification for WEST VIRGINIA UNIVERSITY; Degree clarification for WEST VIRGINIA UNIVERSITY; Date of enrollment clarification for WEST VIRGINIA UNIVERSITY. Email sent to kenstorms@gmail.com.

6

Mar 17, 2017 6:47 AM PDT - Gabriel, Rosalie - Delay:

7

-------Email notification sent to requestor: <fmacchi@paychex.com>

8

-------Reason: Major Discrepancy

-------Estimated Completion Date:20-Mar-2017

9

Mar 20, 2017 6:36 AM PDT - Gabriel, Rosalie - Note: Checked internal filing system for documentation. Documentation and discrepancy clarification is not on file.

10

Mar 20, 2017 10:14 AM PDT - Gabriel, Rosalie - Note: Candidate stated that the dates that HireRight verify for Education at West Virginia University are correct which was 8/1/1991 - 5/1/1992.

11

Mar 20, 2017 10:15 AM PDT - Gabriel, Rosalie - Note: Verified by the NSCH with discrepancy in start and/or end dates of enrollment, degree and degree date. {do}

12

13     As shown below, the document also indicates, under a column

14 labeled "Information Provided," that Plaintiff's dates of attendance at

15 West Virginia University were August 1991–June 1994 and that he had

16 a "Bachelors" degree. (*Id.* at 14.) In contrast, the immediately adjacent

17 "Information Verified" column reflects August 1991–May 1992 dates of

18 attendance and "Some College." (*Id.*)

19

20

21

22

23

| | Information Provided | Information Verified |
|---|---|---|
| School: | WEST VIRGINIA UNIVERSITY | West Virginia University |
| Dates Attended: | Aug 1, 1991 - Jun 1, 1994 | Aug 1, 1991 - May 1, 1992 |
| Degree/Diploma Received: | graduated, degree received | no |
| Degree /Hours Completed: | Bachelors | Some College |
| Date Degree Received: | Jun 1, 1994 | |

24     The parties engaged in meet-and-confer efforts regarding the

25 newly produced evidence and stipulated to continue the trial date amid

26

27

28

8

1    ongoing discussions.  (ECF 171 at 6.)  The District Judge continued the

2    trial to October 1, 2024.[6]  (ECF 163.)

3        Plaintiff subsequently sought a production of "all documents

4    supporting Defendants' position that [Plaintiff] uploaded a false resume

5    to Defendants' system" and "requested that his expert . . . be allowed to

6    conduct [an] inspection of Paychex's system including the

7    MyStaffingPro system . . . ."  (ECF 164-1 at 15; ECF 171-1 at 66–67.)

8    Plaintiff also sought to depose Defendants' Rule 30(b)(6) witness

9    regarding Plaintiff's resume.  (ECF 171-1 at 66–67.)

10       Several days after Plaintiff's late production, Defendants decided,

11   instead, to withdraw their after-acquired-evidence defense.  (ECF 171-1

12   at 4.)  The parties engaged in renewed settlement discussions.  (ECF

13   171 at 6.)  When those negotiations failed, the parties continued to meet

14   and confer.  (*Id.*)  Unsatisfied with Defendants' withdrawal of the

15   affirmative defense, Plaintiff also sought "a stipulation regarding the

16   withdrawal of the affirmative defense" to be used in trial, along with

17   "expungement of the record, and the providing of further discovery."

18   (ECF 164-1 at 16.)  The parties did not come to an agreement

19   concerning any of these items.  (*Id.*; ECF 171 at 6–9.)

20       On July 11, 2024, after nearly two months of unsuccessful meet-

21   and-confer efforts, Plaintiff filed this motion for sanctions (ECF 164),

22   seeking "terminating sanctions" striking Defendants' answer, "thereby

23

24       [6] On September 18, 2024, following the hearing on the motion for
     sanctions and the parties' joint submission of court-ordered
25   supplemental briefing, the parties filed a joint stipulation to continue
     the trial date to "November or December 2024, or such other date
26   thereafter provided by the Court . . . ."  (ECF 176 at 3.)  On September
     24, 2024, the District Judge continued the trial to November 5, 2024.
27   (ECF 177.)

28

terminating their defenses, entering defaults and granting default judgment against them on Plaintiff's claims." (ECF 164-5 at 2.) In the alternative, Plaintiff seeks "issue and evidentiary sanctions," including:

(a) Defendants are precluded from introducing or otherwise submitting Exhibit 420 (identified by bates stamp numbers PAYCHEX020168PAYCHEX020169 [and also as Exhibit SS]) into evidence;

(b) Defendants and their experts are precluded from arguing or presenting any evidence that Plaintiff was dishonest on his resume;

(c) The jury shall be instructed that Defendants willfully falsified and submitted false documents and offered false testimony in this case, and that the jury may consider these facts in drawing inferences at trial and assessing credibility;

(d) All affirmative defenses tainted by Defendants' misrepresentations shall be stricken;

(e) Defendants are ordered to remove and retract all offending and fraudulent pleadings filed in the public record;

(f) It is conclusively established that Mr. Storms did not make any misrepresentations about his college education and that the document that Defendants believed to be Mr. Storms' resume was not prepared, uploaded or otherwise generated by Mr. Storms and was not, in fact, the resume Mr. Storms submitted to Defendants;

(g) Defendants and their experts are prevented from introducing any evidence in support of all defenses regarding Mr. Storms' credibility;

(h) The expert report generated by Defendants' expert, June Hagen, and all opinions contained therein are stricken;

1        (i)  Defendants are precluded from introducing any evidence in support of their affirmative defenses;

2

3        (j) Defendants are ordered to produce all documents relating to Plaintiff in their possession, custody and control; and/or

4

5        (k) Plaintiff is awarded the entirety of his attorneys' fees and costs attributable to Defendants' misconduct.

6

7    (*Id.* at 2–3.)

8        On September 10, 2024, the Court held a hearing on Plaintiff's

9    motion and ordered further briefing on the potential withdrawal or

10   sealing of documents.  (ECF 174.)  On September 13, 2024, the parties

11   filed  joint supplemental briefing, and the Court took the matter under

12   submission.  (ECF 175.)

13                        **II**

14       Rule 26 of the Federal Rules of Civil Procedure requires that the

15   parties disclose the witnesses and exhibits they intend to present at

16   trial at least thirty days before trial or within the time ordered by the

17   court.  Fed. R. Civ. P. 26(a)(3)(A)–(B).  Under Rule 26(e), a party must

18   supplement or correct any RFPs or interrogatory response, or

19   admission,  in a timely manner upon learning of the omission or error,

20   "if the additional or corrective information has not otherwise been made

21   known . . . ."  Fed. R. Civ. P. 26(e)(1).

22       Rule 37 of the Federal Rules of Civil Procedure sets forth the

23   sanctions for failing to comply with these disclosure obligations.  "In

24   ascending order of harshness, the district court may: require the

25   delinquent party or his attorney to pay the reasonable expenses,

26   including attorney's fees, incurred by the innocent party as a result of

27   the failure to obey the order; strike out portions of pleadings; deem

28   certain facts as established for purposes of the action or preclude

admission of evidence on designated matters; dismiss all or part of the action; or render a default judgment against the disobedient party." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980); *see* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi).

The type of sanction ordered is within a district court's discretion. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976).  If the sanction ordered is not tantamount to dismissal, the disobeying party's noncompliance need not be proven to be willful or in bad faith.  *See R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Moreover, "[b]elated compliance with discovery orders does not preclude the imposition of sanctions."  *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (rejecting defendant's argument that sanctions should not have been entered against him because he eventually produced the documents at issue); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995) ("This court has squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance.").

### III

Plaintiff contends that Defendants made misrepresentations to the court "regarding [his] veracity" by relying on "an alleged resume," which they claimed evidenced that he had made during the hiring process "material misrepresentations" concerning his education, and thus, would have been discharged, all while Defendants possessed "documents that established, without a doubt, that their representations" were untrue.  (ECF 164-1 at 16.)  He thus seeks

terminating sanctions in the form of striking Defendants' answer and granting default judgment against them on Plaintiff's claims.  (ECF 164-5 at 2.)  In the alternative, Plaintiff seeks evidentiary and monetary sanctions.  (*Id.* at 2–3.)

## A

Terminating sanctions are not appropriate here.  In "extreme circumstances," a court may impose terminating sanctions when a party "repeatedly and willfully violates the district court's orders." *ChromaDex, Inc. v. Elysium Health, Inc.*, 535 F. Supp. 3d 906, 912 (C.D. Cal. 2021).  They are a "drastic substitute for the adversary process" that are only appropriate where a "pattern of deception" "threatens to interfere with the rightful decision of the case' or makes it impossible to conduct a trial 'with any reasonable assurance that the truth would be available."  *Id.* at 912 (cleaned up).

In contrast with lesser sanctions, terminating sanctions require a court to make a finding of "willfulness, fault, or bad faith."[7]  *R & R Sails, Inc.*, 673 F.3d at 1247.  This standard is met by a showing of "disobedient conduct not shown to be outside the control of the litigant . . . ."  *Henry v. Gill Industries*, 983 F.2d 943, 948–49 (9th Cir.

---

[7] Upon finding a willful violation of a court order, courts consider five factors when determining whether terminating sanctions are warranted: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  "The first two of these factors favor the imposition of sanctions in most cases, while the fourth factor cuts against a default or dismissal sanction.  Thus, the key factors are prejudice and availability of lesser sanctions."  *Wanderer v. Johnstone*, 910 F.2d 652, 656 (9th Cir. 1990).  Because the Court finds no bad faith, it declines to analyze the factors.

1993) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *see also Sas v. Sawabeh Info. Servs.*, No. CV 11-4147-MMM (MANx), 2015 WL 12711646, at *8 (C.D. Cal. Feb. 6, 2015).

Plaintiff has not shown that Defendants willfully violated a court order by withholding discovery. At most, Plaintiff has shown that there existed documents related to his hiring that Defendants did not produce in response to his RFPs, specifically, the 2017 email he sent to a Paychex employee containing his resume, the 2017 email a Paychex employee sent to him regarding his background check, and some communications from HireRight related to the educational discrepancies the company found during the background check. Whether those documents were in Defendants' custody, possession, or control, and withheld, is an open question. The Court notes that Defendants represented at the hearing that they had terminated their relationship with the background check company at some point during this litigation. Further, Plaintiff contributed to the confusion and delay on the question of his degree representations by failing to produce timely the materials that were in his own email account. Applying Plaintiff's rationale, Plaintiff might also be accused of willfully withholding discovery.

Nor has Plaintiff shown that Defendants made willful misrepresentations to the court. At most, he has shown that Defendants referred to the output from their MyStaffingPro system as a "resume," and, via the background check log/report that Plaintiff obtained from HireRight, that Defendants were at least constructively aware that Plaintiff might have misrepresented his education but hired him anyway.

1          Plaintiff certainly has not established that Defendants were
2    wrong in claiming that Plaintiff misrepresented his educational level in
3    the hiring process.  The evidence he submits to show his truthfulness is
4    ambiguous at best.  He points to his January 2017 email to a
5    representative of Defendants, which includes as an attachment a
6    resume that he purports to have used in the hiring process, and which
7    he claims shows no misrepresentation of his education.  (ECF 164-1 at
8    13; ECF 164-4 at 5–6.)  Although the resume does not state
9    affirmatively that he holds a "BS" degree (unlike other iterations
10   produced in discovery), it contains the ambiguous language "Bachelor
11   Degree Program – Business and Education."  ( ECF 164-4 at 6.)
12   Notably, it does not include any dates corresponding to that education.
13   Even assuming Defendants possessed this resume at the time of their
14   summary judgment representations, due to its ambiguity, it is not clear
15   that it contradicts their affirmative defense.

16         Plaintiff also points to the background check log/report from
17   HireRight, as well as the March 2017 email from a representative of
18   Defendants relaying to Plaintiff that the results of that background
19   check had cleared him to begin his employment.  (ECF 164-1 at 13; ECF
20   164-4 at 8, 13.)  Neither render obviously inconsistent the affirmative
21   defense.  The background check log/report does not demonstrate, for
22   example, that Plaintiff accurately represented his education level.  In
23   fact, it could be read as the opposite—that Plaintiff claimed to have had
24   a degree—given the flagged discrepancies between the "information
25   provided" and the "information verified" regarding his degree and dates
26   of enrollment.  (ECF 164-4 at 13–14.)

27         In sum, the Court finds no violation or misrepresentation that was
28   willful.  The timing and sequence of the discovery issues demonstrates

sloppiness, rather than "a pattern of deception."  Accordingly, the Court declines to recommend terminating sanctions.

**B**

In the alternative, Plaintiff requests evidentiary sanctions.  Rule 37(c)(1) of the Federal Rules of Civil Procedure "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Thus, ordinarily, "violations of Rule 26 may warrant evidence preclusion."  *R & R Sails*, 673 F.3d at 1247.  Indeed, "[t]he Advisory Committee Notes describe [Rule 37(c)] as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material . . . .'"  *Yeti by Molly Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37, Advisory Committee Notes to 1993 amendment).

Although the "willfulness, bad faith, or fault" requirement for the imposition of terminating sanctions is not generally applicable to evidentiary preclusion sanctions, an order precluding evidence "that is tantamount to dismissal may [not] be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control."  *Sumitomo Marine & Fire Insurance Company, Ltd.*, 617 F.2d at 1369; *see also R & R Sails, Inc.*, 673 F.3d at 1247.

**1**

Plaintiff asks the Court to "prevent Defendants from introducing or otherwise submitting [Exhibit SS] into evidence and prevent Defendants and their experts from arguing or presenting any evidence that [Plaintiff] was dishonest on his resume," and relatedly, to "strike the report generated by Defendants' expert, June Hagen" concerning

that document.  (ECF 164-1 at 26.)  Defendants have agreed to withdraw their after-acquired-evidence defense, largely resolving the issue.  Relatedly, and based on the state of the evidence, the Court recommends granting Plaintiff's request to preclude Exhibit SS[8] and also recommends granting the request to preclude Defendants from introducing the related Hagen expert report.

**2**

The Court further finds that the above measures adequately address the issue of sanctions.  In evaluating the availability of lesser sanctions, a court must consider the "impact of the sanction and the adequacy of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).  The Ninth Circuit has applied a three-factor analysis for determining whether a district court has considered alternatives to dismissal: (1) whether the court explicitly discussed the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) whether the court implemented alternative sanctions before ordering dismissal, and (3) whether the court warned the party of the possibility of dismissal before actually ordering dismissal.  *Id.*  "[E]xplicit discussion of alternatives is

---

[8] As to the portion of the request seeking to "prevent Defendants and their experts from arguing or presenting any evidence that [Plaintiff] was dishonest on his resume" (ECF 164-1 at 26), the Court does not intend this recommendation to affect any ruling that the District Judge might make at trial regarding use of this evidence for other purposes such as impeachment, or as appropriate should a witness open the door to such evidence.  The Court notes that this request might overlap with Plaintiff's request seeking to "prevent Defendants and their experts from introducing any evidence in support of all defenses regarding [Plaintiff's] credibility" (*id.*), and thus, recommends its denial below.

17

1  unnecessary if the district court actually tries alternatives before

2  employing the ultimate sanction of dismissal." *Id.*

3      Here, there is no indication that more severe sanctions are

4  warranted.  Because this discovery dispute comes before the Court in

5  the first instance, lesser alternative sanctions are preferred.  *See id.* at

6  132; *Sas*, 2015 WL 12711646, at *11 (declining to recommend the

7  imposition of terminating sanctions where defendants had not been

8  given multiple opportunities to comply, nor an express warning by the

9  court concerning terminating sanctions).

10     Moreover, in deciding whether to uphold an award of preclusion

11 sanctions, the Ninth Circuit also considers the "three general purposes"

12 served by Rule 37(b) sanctions: "to ensure that a party does not profit

13 from its own failure to comply; to seek to secure compliance with court

14 orders in a particular case; and to serve as a general deterrent in both

15 the case at hand and other cases."  *Sas*, 2015 WL 12711646, at *9

16 (citing *Sumitomo Marine & Fire Insurance Company, Ltd.*, 617 F.2d at

17 1370).  The Court finds that the withdrawal of the after-acquired-

18 evidence defense and the preclusion of the evidence underlying that

19 defense address sufficiently these purposes.

**3**

21     As to Plaintiff's remaining requests for evidentiary sanctions, the

22 Court recommends denial.

23     First, Plaintiff asks the Court to "strike all affirmative defenses

24 that have been tainted by Defendants' false misrepresentations" and to

25 preclude Defendants from "introducing any evidence in support of their

26 affirmative defenses."[9]  (ECF 164-1 at 25–26.)  Because such sanctions

---

27

28  [9] Plaintiff does not specify which affirmative defenses this request encompasses.

1  would constitute a wholesale dismissal of defenses, the Court must

2  consider "whether the claimed noncompliance involved willfulness,

3  fault, or bad faith." *R & R Sails, Inc.*, 673 F.3d at 1247. As explained

4  above, Plaintiff has not convincingly so demonstrated. Thus, the Court

5  can neither recommend the wholesale preclusion of any affirmative

6  defense—beyond the after-acquired-evidence defense, which Defendants

7  have already agreed to withdraw—nor the preclusion of evidence in

8  support thereof. *See Sas*, 2015 WL 12711646, at *11 (declining to

9  recommend preclusion sanction where plaintiff made "no showing that

10 [d]efendants possess[ed] any evidence on this issue or that they . . .

11 failed to comply with a court order requiring the production of such

12 evidence").

13     Second, Plaintiff seeks to "prevent Defendants and their experts

14 from introducing any evidence in support of all defenses regarding

15 [Plaintiff's] credibility . . . ." (ECF 164-1 at 26.) The Court recommends

16 denial for the same reasons stated above. Further, given Defendants'

17 purported reason for firing Plaintiff—falsification of business

18 expenses—Plaintiff's credibility will likely be a central issue at trial,

19 aside from the now-abandoned defense. (ECF 114 at 5–7.) Accordingly,

20 the Court recommends denying the request to preclude entirely

21 evidence challenging Plaintiff's credibility.

22     Third, Plaintiff asks the Court to "deem it conclusively established

23 that [Plaintiff] did not make any misrepresentations about his college

24 education and that the document that Defendants believed to be

25 [Plaintiff's] resume was not prepared, uploaded or otherwise generated

26 by [Plaintiff] and was not, in fact, the resume [he] submitted to

27 Defendants." (*Id.*) A District Court, as a sanction for discovery

28 misconduct, may order the matters at issue or other designated facts to

be "established" for purposes of the action.  Fed. R. Civ. P. 37(b)(2)(A)(i), (c)(1)(C); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee (Compagnie de Bauxites)*, 456 U.S. 694, 695 (1982).  "But Rule 37 sanctions are limited by two considerations: the sanction must be 'just' and 'specifically related to the particular claim which was at issue in the order to provide discovery.'"  *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 518 (C.D. Cal. 2022) (quoting *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 393 (N.D. Cal. 2012)).

As discussed, much ambiguity remains regarding the propositions which Plaintiff asks the Court to deem established.  Moreover, Defendants have raised at least a genuine dispute whether Rule 37 sanctions are appropriate.  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (substantial-justification standard for avoiding Rule 37 sanctions is "satisfied if there is a 'genuine dispute' or 'if reasonable people could differ as to the appropriateness of the contested action'") (internal citations and alterations omitted); *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981) (finding that "a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification'").  It is not clear to the Court that Defendants had, and withheld during discovery, information responsive to Plaintiff's requests.  Nor is it clear that Defendants knowingly misrepresented information to the Court, outside of what is discussed above, based on the evidence available to them.  Thus, the Court recommends denial of Plaintiff's request to deem established the proposed facts.

Fourth, Plaintiff seeks a jury instruction that "Defendants willfully falsified and submitted fabricated documents, offered false testimony in the form of false declarations, obstructed justice and that the jury may consider and draw adverse inferences from these facts.

1    [. . .] [And] that the Defendants did not tell the truth with respect to

2    claiming [Plaintiff] lied on his resume and that they may choose not to

3    believe anything that witness says." (ECF 164-1 at 26–27.)  Because

4    the Court cannot find that the purported facts underlying this request

5    have been established, such a jury instruction would be improper.  The

6    Court recommends denying this request.

7         Fifth and finally, Plaintiff asks the Court to order Defendants "to

8    produce all documents relating to Plaintiff in their possession, custody

9    and control," "with attestations as to [the] completeness" of such

10   production.  (*Id.* at 8; ECF 164-5 at 2.)  Plaintiff has provided the Court

11   with no persuasive reason why such a broadly defined production would

12   be necessary on the eve of trial and following Defendants' stipulation to

13   withdraw their after-acquired-evidence defense.  Accordingly, the Court

14   recommends denying this request.

15                                  ***

16        In sum, the Court finds both appropriate and adequate the

17   withdrawal of the after-acquired-evidence defense and the preclusion of

18   evidence in support thereof, but leaves open the possible admission of

19   that evidence for other purposes, as appropriate at trial, such as for

20   impeachment of a witness.  The Court declines to recommend Plaintiff's

21   further requested evidentiary sanctions.

22                                   C

23        Next, Plaintiff asks the Court to "require Defendants to remove

24   and retract all offending and fraudulent pleadings . . . ." (ECF 164-1 at

25   25.)

26        At the hearing on the motion for sanctions, Defendants indicated

27   their willingness to withdraw, or place under seal, filings referencing

28   the offending document.  The Court ordered the parties to meet and

1  confer further and to file joint supplemental briefing concerning the

2  affected filings, as well as the parties' chosen measure as to each one.

3      Plaintiff's portion of the joint briefing identifies twelve "Items to

4  be Sealed/Withdrawn."  (ECF 175 at 2–4.)  As to three of those items—

5  contained in documents ECF 129 (joint exhibit list), ECF 135 (disputed

6  jury instructions), ECF 136 (disputed jury instructions)—Defendants

7  objected to both sealing and withdrawal, as they "do not appear to

8  disclose any detail regarding the instant resume issues, but rather

9  simply make reference to 'resume.'"  (*Id.* at 6.)  Otherwise, Defendants

10  maintain that they do "not oppose the sealing of documents as

11  requested," but do "not believe that the documents identified by

12  Plaintiff . . . can be withdrawn from the public record, as such

13  documents include orders issued by the Court, as well as pleadings

14  relied upon by the Court to issue such orders."  (*Id.* at 5–6.)

15      The Court reviews this request under the framework for sealing

16  motions.  The public has "a general right to inspect and copy public

17  records and documents, including judicial records and documents."

18  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Relatedly,

19  there is "a strong presumption in favor of access to court records."  *Foltz*

20  *v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

21      "A party seeking to seal a judicial record then bears the burden of

22  overcoming this strong presumption by meeting the 'compelling reasons'

23  standard," requiring the articulation of "specific factual findings that

24  outweigh the general history of access and the public policies favoring

25  disclosure . . . ."  *Kamakana v. City & County of Honolulu*, 447 F.3d

26  1172, 1178–79 (9th Cir. 2006) (internal citation omitted).  Generally,

27  sufficiently "compelling reasons" exist when "'court files might have

28  become a vehicle for improper purposes,' such as the use of records to

22

1    gratify private spite, promote public scandal, circulate libelous

2    statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon*, 435

3    U.S. at 598). But "[t]he mere fact that the production of records may

4    lead to a litigant's embarrassment, incrimination, or exposure to further

5    litigation will not, without more, compel the court to seal its records."

6    *Id.*

7        The "compelling reasons" standard applies to requests for the

8    sealing of documents connected to dispositive motions and other filings

9    "more than tangentially related to the merits of a case." *Ctr. for Auto*

10   *Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

11   However, the Ninth Circuit has "carved out an exception for sealed

12   materials attached to a discovery motion unrelated to the merits of a

13   case." *Id.* at 1097 (cleaned up). "Under this exception, a party need

14   only satisfy the less exacting "good cause" standard." *Id.* "The 'good

15   cause' language comes from Rule 26(c)(1), which governs the issuance of

16   protective orders in the discovery process: 'The court may, for good

17   cause, issue an order to protect a party or person from annoyance,

18   embarrassment, oppression, or undue burden or expense . . . .'" *Id.*

19   (quoting Fed. R. Civ. P. 26(c)).

20       Plaintiff seeks an order sealing portions of documents pertaining

21   to a motion for summary judgment, a trial exhibit list, proposed jury

22   instructions, and a motion *in limine*, as well as court orders thereon.

23   (ECF 175 at 2–4.) Because Plaintiff has failed to articulate specific

24   facts that would justify sealing—even under the more permissive good-

25   cause standard—the Court need not determine which standard to apply

26   to each category of documents. *See Beckman Indus., Inc. v.*

27   *International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad

28   allegations of harm, unsubstantiated by specific examples or articulated

reasoning, do not satisfy the Rule 26(c) test."); *but see Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.*, No. CV 20-672-RSWL-Ex, 2021 WL 7708482, at *2 (C.D. Cal. Mar. 19, 2021) (finding that compelling reasons standard applied where defendant sought order sealing documents related to motion for summary judgment and requiring plaintiff to file corrected documents). That the parties have stipulated to the sealing of a large share of the documents does not counsel a different result. *See Steril-Aire, Inc. v. First Light Techs., Inc.*, No. SACV 08-00682 AHS (ANx), 2009 WL 10673336, at *1 (C.D. Cal. Dec. 8, 2009) ("Good cause must be shown even if the applicants stipulate to the issuance of the protective order."); *Tan v. Quick Box, LLC*, No. 20cv1082-LL-DDL, 2023 WL 3997968, at *6 (S.D. Cal. June 14, 2023) (denying motion to seal where plaintiff "only generally refer[red] to documents in her sealing request and d[id] not discuss the underlying documents or information in any particularized way," and "also fail[ed] to offer specific demonstration of fact or concrete examples of the way that disclosure would harm [her]"); *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 931780, at *2 (S.D. Cal. Mar. 10, 2014) ("[T]he parties contend that the agreement should be filed under seal because they agree that it should be. This is woefully insufficient to meet the parties' burden [to show 'compelling reasons'].").

Accordingly, the Court recommends denying the request to seal.

**D**

Next, Plaintiff seeks "all fees and costs associated with opposing Defendants' arguments relating to the purported false resume," as well as "the fees and costs involved in bringing this motion," in an amount to be detailed following the disposition of this motion. (ECF 164-1 at 27.)

1    "Under its 'inherent powers,' a district court may also award

2    sanctions in the form of attorneys' fees against a party or counsel who

3    acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

4    *Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*,

5    115 F.3d 644, 648 (9th Cir. 1997)).  Rule 37 contemplates awarding

6    attorney's fees as an additional sanction on top of preclusion sanctions.

7    Fed. R. Civ. P. 37(c)(1)(A) (a court "*may* order payment of the

8    reasonable expenses, including attorney's fees" if there has been a

9    failure "to provide information or identify a witness as required by Rule

10   26(a) or (e)" (emphasis added)).  The amount of monetary sanctions

11   must be "reasonable." *Brown v. Baden (In re Yagman)*, 796 F.2d 1165,

12   1184 (9th Cir.), *as amended by* 803 F.2d 1085 (1986) (reviewing a Rule

13   11 sanction but announcing a standard applicable to other sanctions, as

14   well).

15       The Court finds that the recommended preclusion sanctions are

16   sufficient in these circumstances.  Defendants have metaphorically

17   fallen on their sword in withdrawing the affirmative defense, and the

18   Court cannot find that Defendants' conduct warrants more.  *Compare*

19   *RG Abrams Ins.*, 342 F.R.D. at 522 (recommending award of attorney's

20   fees where magistrate judge could find no circumstances that would

21   make an award of expenses unjust) *with Christensen v. Goodman*

22   *Distribution, Inc.*, No. 2:18-cv-2776-MCE-KJN, 2021 WL 71799, at *7

23   (E.D. Cal. Jan. 8, 2021) (declining to award monetary sanctions in

24   addition to preclusion sanctions where, "[d]espite the extended delay

25   defendant ha[d] weathered, necessitating the expense of bringing th[e]

26   motion, plaintiff's counsel's conduct ha[d] not been egregious enough to

27   warrant further sanctions").  As noted, the Court is satisfied that such

28

1   preclusions serve the purposes of Rule 37 sanctions and allay any

2   unreasonable prejudice to Plaintiff.

3          Accordingly, the Court declines to recommend the imposition of

4   monetary sanctions against Defendants.

5                          **RECOMMENDATION**

6          For the reasons above, IT IS RECOMMENDED that the District

7   Judge issue an Order: (1) accepting and adopting this Report and

8   Recommendation; (2) granting in part and denying in part Plaintiff's

9   motion for sanctions; (3) ordering that Defendants are precluded from

10  presenting the now withdrawn after-acquired-evidence defense and

11  relying, in support, on Exhibit SS and the Hagen expert report; and (4)

12  denying Plaintiff's sealing request.

13

14  DATED: September 26, 2024

15

16  _____

17  HONORABLE STEPHANIE S. CHRISTENSEN
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28